UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

_____

In re:

MATTHEW GLENN ADAMS and          Case No. 20-00645-swd
KATHERINE ELIZABETH ADAMS,        Chapter 7
*fka* KATHERINE ELIZABETH VANDER  Hon. Scott W. Dales
KLIPP,

                Debtors.
_____/

MEMORANDUM OF DECISION AND ORDER

PRESENT:   HONORABLE SCOTT W. DALES
           Chief United States Bankruptcy Judge


I.      INTRODUCTION

When Katherine and Matthew Adams (the "Debtors") converted their case last year from chapter 13 to chapter 7, they assumed they would be able to retain their residence (the "Property"). Their chapter 7 trustee, Jeff A. Moyer (the "Trustee"), however, plans to sell it. Although the parties agree that the Property has most likely appreciated in the two years since the Debtors filed their voluntary chapter 13 petition, they differ about who should get the benefit of that increased equity: the Debtors claim the appreciated value for themselves; the Trustee intends to use it to pay creditors.

To prevent the Trustee from selling the Property, the Debtors filed their Motion to Determine Proper Date for Valuation of Estate Property and Compelling Trustee to Abandon Debtors' Residence as an Asset of the Bankruptcy Estate (ECF No. 91, the "Motion"). They argue that the Trustee "is not entitled to use a post-conversion valuation of the [Property] to claim that there is now non-exempt equity to be administered for the benefit of creditors." *See* Motion at ¶

6.  They contend that, while in chapter 13, they claimed an exemption in the Property and paid more than $27,296.00 to their lender and others to preserve it.  Although the Debtors did not support their Motion with any affidavit or other evidence,[1] their counsel argued during both hearings that her clients paid the tax, escrow, insurance, and mortgage expenses on the Property, admittedly with the assistance of a family member who has since filed a claim on account of his payments.

The Trustee opposes the Motion, relying primarily on a recent decision of the Sixth Circuit.[2]  The court held two hearings, with oral argument, before taking the matter under advisement.  For the following reasons, the court will deny the Motion, albeit without prejudice.

## II.    JURISDICTION

The court has jurisdiction under 28 U.S.C. § 1334 and is authorized, by standing reference from the United States District Court, to resolve the contested matter as a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) (administration matters).

## III.    ANALYSIS

The Debtors filed for relief under chapter 13 on February 17, 2020 (the "Petition Date") and the court confirmed their chapter 13 plan on May 29, 2020.  The main goal of their bankruptcy was to keep the Property which, according to the schedules, is titled solely in Mr. Adams's name.

Following confirmation, the Debtors continued paying into their plan, but their financial circumstances changed, making them unable to continue with their chapter 13 case.  Eventually,

---

[1] "When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions." Fed. R. Civ. P. 43(c) (applicable to this proceeding under Fed. R. Bankr. P. 9017).

[2] *See generally* Trustee's Response to Debtors' Objection to Employment of Realtor, Objection to Employment of Counsel, and Motion to Determine Valuation Date and to Compel Abandonment of Debtors' Residence (ECF No. 99, the "Trustee's Response").

after the chapter 13 trustee filed a motion to dismiss, they converted their case to chapter 7 on June 14, 2021 (the "Conversion Date").  Because the rules permit a debtor to convert from chapter 13 to chapter 7 as of right, without a motion,[3] and because the circumstances surrounding conversion may have important implications for estate property post-conversion, the court issued a Notice of Conversion (ECF No. 59) giving interested parties thirty days to challenge the Debtors' good faith in converting their case.  *See, generally,* 11 U.S.C. § 348(f).[4]  No one responded to the Notice of Conversion and the court finds that the Debtors converted their case in good faith within the meaning of § 348(f).  As a result, property of the estate in the Debtors' chapter 7 case consists of the property that remained in the possession or under the control of the Debtors on the Conversion Date.  *See id*. § 348(f)(1)(A).

Upon conversion, the Debtors also amended their schedules. (ECF No. 66). Specifically, Mr. Adams claimed an amended exemption in the Property in the amount of $3,196.77 under § 522(d)(1).  The Debtors scheduled the value of the Property at $115,000.00 (as of both the Petition Date and Conversion Date), subject to a mortgage of $100,475.76 (as of the Conversion Date). Through their conversion schedules, the Debtors claim approximately $11,000.00 in non-exempt equity in the Property, much more than the single dollar in non-exempt equity in the Property according to their schedules in effect during their chapter 13 case.

In their most recent amendment (ECF No. 103), the Debtors now list the value of the Property as $140,000.00; in the most recent version of Schedule C, Mr. Adams now claims an exemption in the Property under § 522(d)(1) in the amount of $22,559.00.  The Debtors have not

---

[3] *See* Fed. R. Bankr. P. 1017(f)(3). Under that rule, the "filing date of the notice becomes the date of the conversion order for the purposes of applying §348(c) and Rule 1019." *Id.* The conversion order constituted an "order for relief" under chapter 7.  11 U.S.C. § 348(a).

[4] In the text of this Memorandum of Decision and Order the court will refer to any section of the Bankruptcy Code, 11 U.S.C. § 101 et seq., as "§ ___," and will refer to any Federal Rule of Bankruptcy Procedure simply as "Rule ___."

amended the mortgage debt on Schedule D since their case was converted ($100,475.76). As the schedules now stand, the court estimates there may be approximately $16,966.00 in non-exempt equity in the Property, and perhaps more depending on its market value.

During the pendency of their chapter 13 case, the Debtors fairly consistently made payments through their plan to their mortgage holder, Caliber Home Loans, Inc. ("Caliber"), until their financial circumstances caused them to fall behind. After the Conversion Date, Caliber filed a motion for relief from the automatic stay. Although the Debtors opposed Caliber's motion, the Trustee did not. At the hearing on its motion for relief from stay, Caliber was not prepared to offer evidence in support of its requested relief, so the court denied the motion.

The court entered the Debtors' chapter 7 discharge on November 10, 2021, relieving them of the obligation to make payments on most debts that arose before the Conversion Date. 11 U.S.C. § 727(b).

Following the court's denial of Caliber's motion, a relative of the Debtors, Roger VanderKlipp, evidently paid Caliber sufficient funds ($10,602.95) to reinstate their mortgage and forestall Caliber from filing another motion for stay relief. *See* Proof of Claim No. 17-1. At the hearings on the Motion, the Debtors also argued that they have paid insurance, and kept the taxes current on the Property, further protecting the equity for the benefit of the bankruptcy estate. The reinstatement preserved the estate's interest in the Property by forestalling foreclosure. There is no suggestion, in the record or otherwise, however, that the Trustee asked the Debtors or Mr. VanderKlipp to reinstate the mortgage after the Debtors' default or to take any other steps to preserve the Property.

Although the Motion itself does not specify any estimate of the Property's value,[5] the Debtors argue that its post-petition appreciation due to the current market, as well as their (and Mr. VanderKlipp's) payments to Caliber, have increased the equity in the Property. Because this increase is in no way attributable to the efforts of the Trustee, they argue that the increase should inure to them, not their chapter 7 bankruptcy estate. The Trustee disagrees.

First, the Debtors argue that "[a]bsent a bad-faith conversion, the proper date for valuing estate property in a converted case is the date the original petition was filed." *See* Motion at ¶ 14. They reach this conclusion by emphasizing language within § 541(a)(1) to the effect that "once a petition is filed, the bankruptcy estate is comprised of all legal and equitable interests in property as of the commencement of the case." *Id.* at ¶ 14(a) (emphasis original).

This argument, however, confuses the *value* of estate property with the legal or equitable *interests* in that property, as of the commencement of the case. Section 541 is concerned with the latter, not the former. The purpose of the statute is to aggregate to the greatest extent possible, albeit with some exceptions, every stitch of property belonging to a debtor so that it can be used to pay claims, including exemption claims. The court regards the value of any property as an attribute or incident of the property, not a separate right or interest in the property. *See In re Castleman,* 631 B.R. 914, 919 (Bankr. W.D. Wash. 2021) ("Post-petition appreciation is not treated as a separate asset from pre-petition property and inures to the bankruptcy estate, not the debtor."). Instead, various "interests" in property will determine who, among competing claimants, will benefit from the property's value. The Bankruptcy Code addresses the valuation of estate property for various purposes and at different times during a case in sections other than § 541. *Compare* 11 U.S.C. § 541 (referring to "interests" but omitting any reference to "value") with,

---

[5] At oral argument, the parties bandied about figures for the Property, with suggested values ranging from $148,000.00 to $169,000.00.

*e.g.*, §§ 348(f)(1)(B), 522(b)(3)(A), 506(a)(2), 542(a), 547(d), 554(b), 1225(a)(4), 1225(a)(5)(B)(ii), 1225(b)(1)(A), 1325(a)(4), 1325(a)(5)(B)(ii), 1325(b)(1), and 1129 (all of which specifically address "value" for various purposes).

The court's understanding conforms generally to the opinion expressed in a recent, albeit unpublished, decision of the United States Court of Appeals for the Sixth Circuit. *See Coslow v. Reisz*, 811 Fed. App'x 980, 983 (6th Cir. 2020) ("in general, post-petition increases in equity do become part of the bankruptcy estate, as long as the equity isn't payment for post-petition services."). *Coslow* is highly persuasive despite the panel's decision not to publish it.

No one would dispute, for example, that outside of bankruptcy Mr. Adams (as the owner of the fee simple interest in the Property) would be entitled to any appreciation in its value, and the Supreme Court has long held that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54 (1979). Indeed, the right to benefit from the appreciation of one's property is among the most valuable "sticks" in the "bundle of sticks" (to use the Supreme Court's analogy in *United States v. Craft*, 535 U.S. 274 (2002)).[6]  The value of the real estate is a consequence of market forces, the condition of the property, and its location – it is not itself an interest in the property.  Instead, as noted above, the interests in the property determine how we allocate that value, as the Supreme Court did in *Craft*.  Under § 541(a)(1) and subject to § 541(a)(6), the Trustee (as the estate's representative) holds the appreciation "stick."

Next, relying on § 522(b)(2), the Debtors argue that "[f]or purposes of exemption, § 522(a)(2) defines 'value' as the fair market value as of the petition filing date (in this case,

---

[6] In addressing the reach of a federal tax lien, the Supreme Court in *Craft* found that the "bundle of sticks" under Michigan real property law includes a co-tenant's right to income from property and a share of sale proceeds. As an historical note unrelated to the current controversy, Mr. Moyer was "on the briefs" for the respondent in *Craft*.

February 17, 2020)." *See* Motion at ¶ 14(f). Although it has no quarrel with the Debtors' recitation of the statute, the court does not agree that the value of the exemption (determined as of the Petition Date) governs the value of the estate's interest in the Property upon which the exemption claim depends. First, even assuming the court had valued the estate's interest in the Property in the chapter 13 phase of the case, the Bankruptcy Code is quite clear that this valuation would not apply in the chapter 7 phase of the case. *See* 11 U.S.C. § 348(f)(1)(B) ("valuations of property … in the chapter 13 case shall apply only in a case converted to a case under chapter 11 or 12, but not in a case converted to a case under chapter 7 …").

Section 554(b) supplies another statutory signal prompting the court to reject the Debtors' argument for valuing the Property as of the Petition Date: by using the present tense, § 554(b) requires the court to consider a property's current benefit (or burden) to the estate, *i.e.*, in proximity to the date of the proposed abandonment. *See* 11 U.S.C. § 554(b) ("… court may order the trustee to abandon any property of the estate that *is* burdensome to the estate or that *is* of inconsequential value and benefit to the estate." (emphasis added)); *Coslow*, 811 Fed. Appx. at 984 (making this point).[7] To her credit, Debtors' counsel conceded this point during the most recent hearing. Therefore, any reliance on § 522(b)(2) is misplaced and the court rejects the argument against contemporaneous valuation of the Property in connection with the proposed abandonment.

Moreover, it is too late in the day, after *Schwab v. Reilly*, 560 U.S. 770, 772 (2010), to argue that Mr. Adams exempted the Property "in kind" in the chapter 13 phase of the Debtors' case and thereby removed it from the estate. Indeed, the Debtors' request to compel the Trustee to abandon the Property necessarily concedes that all of their prepetition interests in the Property, which are in their possession or control upon conversion, remain in the estate. Otherwise, there

---

[7] Tellingly, the turnover statute also employs the present tense, requiring the court to evaluate the current benefits flowing from the particular property at issue. *See* 11 U.S.C. § 542(a).

would be no point in compelling the Trustee to abandon it.   Mr. Adams's exemption under § 522(d)(1) entitles him only to a portion of the value of the Property -- his aggregate interest not to exceed a specified amount -- not the Property itself.   11 U.S.C. § 522(d)(1).   Nothing in the Trustee's proposed administration of the Property threatens that exemption – the Trustee could sell the Property and account for the exemption claim by paying the exempt portion (or "value" in the words of the statute) from the sale proceeds or other estate property.   This is all that Mr. Adams is entitled to under § 522(d), though a sale by the Trustee would eventually require the Debtors to relinquish possession of the Property.   This, of course, is what the Bankruptcy Code requires of entities in possession of estate property that a trustee may use, or a debtor may exempt.   11 U.S.C. § 542(a).   In effect, most exemptions which entitle a debtor to a representative value, measured by former ownership of particular property, operate as a charge against that property, much like a lien to secure payment of the specified amount, rather than title to the thing itself.

The court recognizes that in years in which many homes are "underwater," which is to say when the value of encumbrances, costs of sale, and exemption claims exceed the value of the property, a claim of exemption as a practical matter may lead a chapter 7 trustee to decide not to administer the property, resulting ultimately in its abandonment to the debtors under § 554 (either on motion or by operation of law at the end of the case).   But this happy outcome for debtors is the product of the fortuity of the market and mortgage balances, not any statutory or other right to post-petition appreciation.   In the current market environment, where property values are generally increasing, debtors are at risk of having to surrender their homes to their chapter 7 bankruptcy trustees who, charged with the statutory duty to reduce estate property to money, may seek to sell a debtor's home. 11 U.S.C. §§ 363(b) and 704(a)(1).   Yet, this is the deal that chapter 7 debtors strike with their creditors (and the risk they accept) in exchange for getting relief from their debts,

as the Debtors did last year when they voluntarily converted their case to chapter 7, rather than dismissing it.[8]  Indeed, they already have the benefit of the discharge and have lived in the Property after the Conversion Date.

At oral argument, Debtors' counsel endeavored to distinguish the Sixth Circuit's decision in *Coslow*, *supra* at pp. 5-6, by arguing that the post-petition increase in equity in the Property should not be included in the bankruptcy estate because unlike *Coslow*, which involved the reduction of debt using the proceeds of the liquidation of non-debtor business assets, the current increase in equity resulted from market forces and a contribution from the Debtors and their family member.  The court is not persuaded that these distinctions make any difference.  Judge McKeague summed up the *Coslow* panel's answer to the question of whether post-petition increases in equity inure to the bankruptcy estate in this way:

> [T]he bankruptcy estate acquires all "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, *except* such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6) (emphasis added). So, in general, post-petition increases in equity do become part of the bankruptcy estate, as long as the equity isn't payment for post-petition services.

*Coslow*, 811 Fed. App'x at 982-83.  Using this analysis, Judge McKeague held that the increase in equity resulting from a third-party's post-petition paydown of the debtor's home mortgage devolved upon the estate, not the debtor, so long as the augmenting of the equity is not attributable to post-petition earnings.  In the present case, and in obedience to *Coslow*, the Trustee agreed to pay the Debtors from any sale proceeds to account for any post-petition earnings included in the proceeds.  *See* Trustee's Response at 5.  The court predicts that the Sixth Circuit would treat any

---

[8] Debtors might have avoided this risk by voluntarily dismissing their case, as the Sixth Circuit says they are utterly free to do, *In re Smith*, 999 F.3d 452, 455 (6th Cir. 2021), but that approach necessarily invites other risks.

augmentation in value due to market forces in the same way that it addressed the increased equity in *Coslow*.

Finally, in an effort to persuade the court to compel the Trustee to abandon the property, the Debtors argue that if we subtract from the value of the Property the costs of sale (estimated at 10%), and the sum of payments they made (and that Mr. VanderKlipp made on their behalf), the Property is not worth administering or, in the words of the statute, is of "inconsequential value and benefit to the estate." *See* 11 U.S.C. § 554(b). Although the court regards the Debtors' argument as consistent with the "commonsensical" approach described in *In re K.C. Mach. & Tool Co.*, 816 F.2d 238, 246 (6th Cir. 1987), it perceives several shortcomings at this point in the proceeding.

For one thing, the record does not permit the court to determine the value of the Property at this time, and the parties have not agreed on any value, speaking instead in hypothetical terms during the hearing. The court could hold an evidentiary hearing to consider testimony and appraisals regarding value, but the cost of proceeding in that manner, and the accuracy of judicial appraisals generally, should give everyone pause. The Trustee argued, and the court agrees, that everyone will have a better idea about the actual value of the Property when the Trustee has a purchase offer in hand. He has already retained a realtor, and in the current housing environment it seems reasonable to assume that an offer may be available in short order.

Moreover, at this stage of the proceedings the court could not determine whether or to what extent to give credit for the various payments. The Debtors have not formally documented their contribution or subjected it to the formal notice and hearing that § 503 requires as a prerequisite to allowance of administrative claims. *See* 11 U.S.C. § 503(b). Instead, during the hearings Debtors' counsel only referred generally to money spent on paying Caliber, funding escrows, paying taxes, and insurance. It is conceivable that the Debtors could supplement their counsel's argument with

evidence but incurring the cost of proceeding in this way at this point does not seem worthwhile after considering the legal impediments to giving the Debtors credit for the various expenditures.

For example, to the extent they seek, in effect, to surcharge their residence for the cost of preserving it, the Bankruptcy Code as interpreted by the Supreme Court dims the prospects for successful surcharge. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000) (refusing to permit creditor to surcharge estate property); *see also In re White*, Slip Op. Case No. 13-21977, 2020 WL 8184206 (Bankr. E.D. Mich. Sept. 30, 2020) (refusing to permit debtor to surcharge residence for the costs he incurred in protecting the property from fire and casualty, forfeiture and foreclosure by the local taxing authority) (Opperman, C.J.).

To the extent the Debtors are seeking credit for administrative expenses, even if they had filed a claim, they would have difficulty meeting the "benefit to the estate" test which provides that a debt qualifies as an "actual, necessary" administrative expense only if "(1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate." *In re Sunarhauserman, Inc.*, 126 F.3d 811, 816 (6th Cir. 1997) (citing *Employee Transfer Corp. v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106, 110 (6th Cir. 1987)). There does not appear to have been any transaction with the bankruptcy estate, but rather transactions between the Debtor and Caliber and others (such as taxing authorities), even conceding there was a benefit to the estate from the Debtors' payments. Moreover, the court has previously expressed reluctance to allow priority claims in favor of entities who would have incurred the expense at issue regardless of the possibility of priority treatment. *Cf. In re Seaman*, 588 B.R. 790, 794 (Bankr. W.D. Mich. 2018) (Section 503(b)(3)(D) excludes reimbursement for activities of creditors and other interested parties designed primarily to serve their own interests and which they would have undertaken anyway without the possibility of reimbursement).

Mr. VanderKlipp's claim (although actually filed unlike the Debtors' claims) suffers from similar deficiencies.[9]  As noted above, the law in our Circuit is well-settled that an administrative claim generally must arise from a transaction with the estate and not, as here, a transaction with Caliber, wholly independent of any dealings with the Trustee as the estate's representative.  It appears the Debtors and Mr. VanderKlipp acted on their own, without prompting from the Trustee, so they could retain possession of the Property post-bankruptcy.

Finally, the Debtors' policy and fairness arguments – to the effect that a decision favoring the Trustee will discourage debtors from resorting to chapter 13 – are ultimately unpersuasive and, in any event, better addressed by Congress.  *Hartford Underwriters,* 530 U.S. at 13-14 ("Achieving a better policy outcome—if what petitioner urges is that—is a task for Congress, not the courts."); *contra Rodriguez v. Barrera (In re Barrera),* 2020 WL 5869458, BAP No. CO-20-003 (BAP 10th Cir. Oct. 20, 2020) (relying on legislative history and policy concerns to allocate post-petition appreciation to debtors). The fact that litigants, or courts for that matter, may read a statute differently does not invariably mean that the statute is ambiguous, thereby opening the door to legislative history; it may simply mean that one of the interpretations is wrong. *Bank of America Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 461 (1999) (Thomas, J., concurring).  After carefully reading § 348(f) and § 541(a), the court does not regard the former as ambiguous, and will not rest its decision on legislative history, largely for the reasons set forth in *Castleman*, 631 B.R. at 618-19 (finding legislative history unclear on question of post-petition appreciation due to market forces and pay down of mortgage).  In any event, "legislative history is not the law." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018).

---

[9] Although Mr. VanderKlipp did file a proof of claim using a process generally reserved for "creditors," the court could forgive the form of his request because the Bankruptcy Code does not prescribe any particular form for seeking administrative expense priority, as long as the notice function is met.  *See In re Faye Foods, Inc.*, 766 Fed. App'x 204, 213 n. 7 (6th Cir. 2019).

Despite the court's rejection of the Debtors' policy arguments, chapter 13 still presents the best avenue for debtors to retain property in bankruptcy, and the unqualified right to dismiss their chapter 13 proceedings protects them from any adverse consequences of conversion to chapter 7.

IV.    CONCLUSION & ORDER

The Bankruptcy Code's logic in addressing a debtor's property interests is relatively straightforward and, as this case illustrates, occasionally painful.  The syllogism, which anoints or disappoints depending on a participant's role and the circumstances of a case, is simple.  In a voluntary case like the present, and with one relevant exception involving post-petition earnings, a debtor's filing of a petition creates an estate comprising "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Among the interests included within the estate is the right to sell the property and enjoy the proceeds of sale, including any post-petition appreciation in value, so long as the appreciation is not allocable to a debtor's post-petition earnings.  *See* 11 U.S.C. § 541(a)(6); *Coslow, supra.*

Here, this means that the Trustee may continue to administer the Property by marketing it and, if he locates a purchaser, seeking court approval of the sale under § 363(b).  At that time, assuming proper notice to interested parties, the Debtors may seek a credit or credits for whatever charges the Bankruptcy Code allows, and if the permissible credits (together with the exemption claim, the costs of sale, and valid encumbrances) render the Property of inconsequential value and benefit to the estate, the court may revisit the abandonment request.  This is the approach the Trustee advocated during the hearing and the one the court now adopts.

Under the circumstances and for the foregoing reasons, the court will deny the Debtors' request to compel the Trustee to abandon the Property.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion is DENIED without prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the Debtors, Kathleen M. Dunne, Esq., Jeff A. Moyer, Esq., chapter 7 trustee, and the United States Trustee.

END OF ORDER

**IT IS SO ORDERED.**

**Dated June 9, 2022**



Scott W. Dales
United States Bankruptcy Judge